IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ATRIO HEALTH PLANS, INC., an
Oregon corporation; MID VALLEY IPA,     Case No. 6:19-cv-00818-MC
INC., an Oregon nonprofit corporation dba
Health Authority; CASCADE     ORDER
COMPREHENSIVE CARE, INC., an
Oregon Corporation; and UMPQUA
HEALTH, LLC, an Oregon limited
liability company,

                Plaintiffs,
    v.

PERFORMANCE HEALTH
TECHNOLOGY, LTD., an Oregon
Corporation dba PERFORMANCE
HEALTH TECHNOLOGY, INC.; and
OPTIMA, LLC, an Oregon limited
liability company dba INTELIGENZ

                Defendants.
_____

MCSHANE, Judge:

       This action arises from a contract dispute between Plaintiff ATRIO Health Plans, Inc. (ATRIO) and Defendants Performance Health Technology, Ltd. (PH TECH) and Optima, LLC (Optima). Plaintiff brings breach of contract and negligence claims against Defendants based on

ORDER - 1

alleged actions (or inactions) by Defendants causing Plaintiff to submit incorrect information to the Centers for Medicare and Medicaid Services (CMS). PH TECH removed this action from state court citing federal question jurisdiction. ATRIO moves to remand back to Marion County Circuit Court based on lack of federal jurisdiction. ATRIO's motion to remand, ECF No. 13, is GRANTED.

## BACKGROUND

ATRIO operates a Medicare Advantage plan in Oregon, providing insurance plans to Medicare beneficiaries within the state. ATRIO works with Service Area Contractors (hereinafter "SACs"), independent physician associations and hospital organizations, to provide medical care for ATRIO's members. ATRIO's SACs include Plaintiffs Mid Valley IPA, Inc., Cascade Comprehensive Care, Inc., and Umpqua Health, LLC. In exchange for providing its members with Medicare benefits, ATRIO receives monthly payments from CMS based on a calculation of certain factors. Compl. ¶ 15. CMS provides a higher payment amount to ATRIO for its enrolled members that meet certain high-risk conditions or are diagnosed with specific serious diseases. Compl. ¶ 16. In order to receive these higher payouts from CMS, ATRIO must submit member medical information to the CMS Risk Adjustment Processing System ("RAPS"). Compl. ¶ 17. If the information submitted to RAPS meets certain criteria, then ATRIO is allotted the more substantial payments to supplement the increased cost of providing care to its higher-risk members.

Since 2011, ATRIO has contracted with PH TECH to perform administrative duties and to process claims from ATRIO's members. Compl. ¶ 26. Within these contractual duties, PH TECH was responsible for "filtering" claims that did not qualify for risk adjustment based on the RAPS criteria. To synthesize the complaint, ATRIO claims that PH TECH failed to properly

perform this filtering responsibility, resulting in misinformation being submitted to CMS. Submission of this misinformation regarding the risk status of some of ATRIO's members resulted in overpayment to ATRIO by CMS of allegedly $30,791,181. Compl. ¶ 106. ATRIO alleges similar claims of failure to perform contractual duties against Optima. ATRIO seeks reimbursement from the Defendants for the overpayment amount that is due for repayment to CMS and monetary damages for ATRIO's lost revenue and other harms from Defendants' alleged actions.

### STANDARDS

A defendant may remove a civil action from state court to federal district court if the federal court would have had original jurisdiction over the matter. 28 U.S.C. § 1441(a). In other words, when the court lacks diversity jurisdiction, removal is proper only when the court has federal-question jurisdiction over the subject matter of the complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id*. (internal quotations and citation omitted). In the context of the well-pleaded complaint rule, federal-question jurisdiction means that the complaint itself "establishes that the case 'arises under' federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983). In order to arise under federal law, "[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Id*. at 10-11 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

There is a narrow exception to the well-pleaded complaint rule where federal jurisdiction may be asserted over strictly state law claims which pose a disputed federal issue. *Grable & Sons*

*Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313-14 (2005). The applicability of this exception is governed by a four-factor test set forth by the Supreme Court in *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Federal jurisdiction can be exerted over strictly state law claims only if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*.

If, following removal, the court determines it lacks original jurisdiction, it must remand the matter to state court. 28 U.S.C. § 1447(c); *Franchise Tax Bd.*, 463 U.S. at 8. "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id*. (quoting *Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990)).

**DISCUSSION**

Plaintiffs bring claims of breach of contract and negligence against Defendants in connection with alleged failures to perform contractual obligations. Although Plaintiffs bring no claims under federal law, Defendants removed this action citing federal question jurisdiction. Federal jurisdiction exists here only if the Plaintiffs' claims fall within the narrow exception to the well-pleaded complaint rule established in *Grable*. To be within this slim category, the Defendants must show that the claims meet the four factors set forth in *Gunn*. Failure to meet any of the factors will result in remand.

## I. This Court Lacks Federal Jurisdiction Over Plaintiffs' Claims

A federal issue is "necessarily raised" if it must be resolved in the determination of the case. *Gunn*, 568 U.S. at 259. The claims here necessarily raise federal issues. As noted above, ATRIO alleges its contract with PH TECH required PH TECH to comply with certain CMS regulations and federal laws. For example, ATRIO alleges:

> 125. The Administrative Services Agreements required PH TECH to comply with all applicable Medicare laws, regulations, and CMS instructions.
>
> 126. The Administrative Services Agreements required PH TECH to comply with ATRIO's rules of participation as such rules relate to the administration of the CMS Agreement.
>
> 127. The Administrative Services Agreements required PH TECH to comply with all required terms of 42 C.F.R. Part 422.
>
> 128. Pursuant to each of the Administrative Services Agreements, PH TECH warranted and agreed that any services or other activities performed by PH TECH pursuant to the Administrative Services Agreements would comply with ATRIO's contractual obligations under the CMS Agreement.
>
> 129. Under the terms of the Administrative Services Agreements, PH TECH agreed to perform all assigned processes and functions according to ATRIO's specifications.
>
> 130. The terms of the Administrative Services Agreements required PH TECH to perform all assigned processes and functions according to CMS specifications.
>
> 131. Under terms of the 2016 ASA, PH Tech was classified as a "first tier" entity as defined under 42 C.F.R. §§ 422.500(b) and 423.501 and PH TECH agreed to follow the regulatory provisions that are incorporated into contracts with first tier entities pursuant to 42 C.F.R. § 422.504, including the requirement that PH TECH shall comply with all applicable Medicare laws and regulations and CMS instructions.
>
> 132. The Administrative Services Agreements required PH TECH to maintain "written administrative and operational policies and procedures to administer the Plan in compliance with CMS requirements as set forth in 42 C.F.R. Part 422 and the CMS Agreement.

Compl. ¶¶ 125-132.

The underlying claims stem from ATRIO's allegations that PH TECH failed to comply with federal regulations as required in their contract. For example, the complaint alleges:

> 142. PH TECH committed a material breach of the Administrative Services Agreements by failing to process and filter RAPS files in accordance with CMS methodology.
>
> 143. PH TECH committed a material breach of the Administrative Services Agreements by not properly processing RAPS files.
>
> 144. PH TECH committed a material breach of the Administrative Services Agreements by submitting risk adjustment claims to CMS that were not based on diagnosed conditions received from a qualified healthcare provider for treatment in the twelve-month period before the payment year for the submitted where the diagnosis for risk adjustment (1) stemmed from a face-to-face visit; (2) with a qualified healthcare provider; (3) during the appropriate service period; and (4) documented in a medical record.
>
> 145. PH TECH committed a material breach of the Administrative Services Agreements by submitting to CMS risk adjustment claims that included invalid diagnoses to CMS.
>
> 146. PH TECH committed a material breach of the Administrative Services Agreements by submitting to CMS risk adjustment claims that included ineligible provider types.
>
> 147. PH TECH committed a material breach of the Administrative Services Agreements by submitting to CMS ATRIO"s risk adjustment claims that included services that were ineligible for risk adjustment payments.

Compl. ¶¶ 142-147.

But even though a court resolving this action will determine whether (1) these laws apply to the Defendants under the relevant contracts and (2) if so, whether Defendants breached the contracts (or violated the relevant standard of care), such determinations do not necessarily establish federal jurisdiction over this action.

A federal issue is "actually disputed" if there is a genuine dispute "respecting the validity, construction or effect of [federal] law." *Grable* 545 U.S. at 313 (alteration in original) (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)). Broadly, PH TECH argues that the Court must

resolve four disputed federal issues: (1) whether PH TECH is a "first tier entity" under 42 C.F.R. § 422.500 and had to comply with federal regulations; (2) whether PH TECH violated federal regulations in submitting allegedly erroneous RAPS data; (3) whether ATRIO could "delegate" to PH TECH its responsibilities to CMS; and (4) whether Defendants' alleged actions caused the harm Plaintiffs are claiming . Def.'s Opp'n to Pls.' Mot. To Remand 12-18, ECF No. 18. While the presence of federal regulations in this case is undeniable, the federal issues involved are not in dispute with respect to "the validity, construction or effect of [federal] law." *Grable*, 545 U.S. at 313. A closer look at *Grable* is instructive.

In *Grable*, the plaintiff brought a quiet title action, claiming an IRS seizure was invalid. The relevant statute required the IRS to give written notice "to the owner of the property [or] left at his usual place of abode or business. *Id.* at 310. Plaintiff argued "that the statute required personal service, not service by certified mail." *Id.* The Court noted that "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." *Id.* at 314.

PH TECH, on the other hand, disputes that it is a first-tier entity factually. It does not dispute how a first-tier entity is defined under federal law, nor does it challenge the validity of this definition. Instead, PH TECH disputes the application of this definition to the contracts in dispute. The resolution of ATRIO's claim focuses on a factual determination of whether the contracts require PH Tech to "comply with all Medicare laws and regulations and CMS instructions," Compl. ¶ 131, and, if so, did PH TECH breach the contracts by failing to comply "with applicable provisions of the Medicare Advantage Program, 42 C.F.R. Part 422, and other applicable state and federal law," Compl. ¶ 155. Simply put, this case is not "the rare exception

to the general rule that federal-question jurisdiction exists only where there is a federal cause of action." *Oregon ex rel. Kroger v. Johnson & Johnson*, 832 F.Supp.2d 1250, 1255 (D. Or. 2011). Instead, this case is "fact-bound and situation-specific," and federal jurisdiction is not warranted. *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

Likewise, ATRIO's claims lack a "substantial" federal issue. To determine if a federal issue is substantial, courts look "to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. *Gunn* is on point. There, the plaintiff brought a malpractice claim against his former attorneys, arguing they should have raised a valid defense (the "experimental use" argument) in plaintiff's earlier patent case. Gunn argued that because his malpractice case depended on the interpretation of federal patent law (i.e., a "case within a case"), the federal issue was necessarily substantial. The Court disagreed. Although "resolution of a federal patent question is 'necessary' . . . [and] "actually disputed," it "is not substantial in the relevant sense." *Id.* at 259-60. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires. The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id.* at 260 (second alteration in original).

Here, ATRIO's claims have little impact on any non-party or the CMS regulations. Defendants are generally correct that CMS and the regulation of Medicare are of federal interest. They point to the heavy regulations put on Medicare Advantage plan providers like ATRIO as evidence of a federal interest in this case. However, CMS is not a party to this case, and ATRIO does not challenge the validity, or even the interpretation, of the regulations. After all, "ATRIO has reported to CMS the overpayments set forth above and opened remedy tickets to correct the

overpayments." Compl. ¶ 107. The complaint acknowledges it is ATRIO, not defendants, who are liable to CMS. *See* Compl. ¶ 204 (The alleged breaches "have exposed ATRIO to those CMS claims."). Additionally, ATRIO is paying the claims, seeking only to later recover its damages from defendants. *See* Compl. ¶ 207 ("ATRIO is currently discharging its legal obligation owed to CMS as a result of CMS' overpayment"). Resolution of this case will have no bearing on the regulations of CMS, nor the amount of funds CMS will receive for the overpayments it is owed.

In *Grable*, the interpretation of the IRS notice provision would resonate nationwide. *Grable*, 545 U.S. at 314 (The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in the prompt and certain collection of delinquent taxes, and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers . . . to satisfy themselves that the Service has touched the bases necessary for good title." (internal quotations and citations omitted)). Here, the dispute concerns only the specific contracts at issue, including what specific obligations the contracts imposed on the parties to the contracts.

Finally, opening cases of this kind up to federal jurisdiction would upset the balance of judicial responsibilities between federal and state courts. "[I]t takes more than a federal element 'to open the "arising under" door.'" *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (quoting *Grable*, 545 U.S. at 313). Without a clear federal interest or a necessarily raised and disputed federal issue, the mere implication of CMS or Medicare generally is not sufficient to establish federal jurisdiction over traditional state contract and tort claims. *See Hofler v. Aetna US Healthcare of Cal., Inc.*, 296 F.3d 764, 768 (9th Cir. 2002), abrogated on other grounds by *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 (2005) ("Congress clearly did not manifest any intention to convert all state tort claims arising from the administration of

Medicare benefits into federal questions."); *See also Commonwealth v. TAP Pharm. Prods.*, 415 F.Supp.2d,525 n.6 (E.D. Penn. 2005) ("Medicare does not preempt a state's ability to regulate fraudulent billing practices under state consumer protection statutes.").

**II. Attorney Fees**

Plaintiffs cite 28 U.S.C. § 1447(c) as the basis for their request for attorney fees following the improper removal. A court may award fees under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Removal is not objectively unreasonable solely because the removing party's arguments lack merit and the removal is ultimately unsuccessful." *Bergen v. Tualatin Hills Swim Club, Inc.*, 170 F.Supp.3d 1309, 1315–16 (D. Or. 2016). Instead, courts ask "whether the relevant case law clearly foreclosed the defendant's basis for removal[.]" *Id*. at 1316 (quoting *Lussier v. Dollar Tree Stores*, 518 F.3d 1062, 1065 (9th Cir. 2008)). As explained by the Supreme Court:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when statutory criteria are satisfied.

*Martin*, 546 U.S. at 140.

While ultimately unsuccessful in removal, PH TECH was not "clearly foreclosed" from removing this action based on relevant case law. In making this determination, I note the question of whether a state claim arises under federal law is often less-than crystal clear. *See Gunn*, 568 U.S. at 258 (noting caselaw on this issue resembles a Jackson Pollock painting). Likewise, there is no evidence to suggest that PH TECH removed to federal court simply to prolong the litigation or impose extra costs on plaintiffs. Plaintiffs' request for fees is DENIED.

ORDER - 10

# CONCLUSION

"Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566. Defendants have not met their burden of establishing that removal was proper. Therefore, I must remand this matter to state court. 28 U.S.C. § 1447(c); *Franchise Tax Bd.*, 463 U.S. at 8. Plaintiffs' motion to remand, ECF No. 13, is GRANTED.[1]

IT IS SO ORDERED

DATED this 13th day of August, 2019.

                                                       /s/ Michael McShane
                                                         Michael McShane
                                           United State District Judge

---

[1] Also pending are defense motions to compel arbitration and for summary judgment. As the Court lacks jurisdiction over the complaint, a state court judge will presumably consider those arguments should defendants raise them going forward.

ORDER - 11